**Appeal No. 2014-1224**

_____

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

_____

MORRIS NATIONAL, INC.,

*Appellant,*

v.

ADAMS & BROOKS, INC.,

*Appellee,*

On Appeal from the United States Patent and Trademark Office
Trademark Trial and Appeal Board
Cancellation No. 92052158

---

## NON-CONFIDENTIAL BRIEF FOR APPELLEE ADAMS & BROOKS, INC.

---

Bassam N. Ibrahim
Bryce J. Maynard
BUCHANAN INGERSOLL & ROONEY PC
1737 King Street, Suite 500
Alexandria, VA 22314
Telephone: (703) 836-6620
Attorneys for Appellee Adams & Brooks, Inc.

April 25, 2014

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Counsel for the Appellee Adams & Brooks, Inc. certifies the following:

1. The full name of every party or amicus represented by me is:

   Adams & Brooks, Inc.

2. The name of the real party in interest represented by me is:

   Adams & Brooks, Inc.

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

   N/A

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

   BUCHANAN INGERSOLL & ROONEY PC

   Bassam N. Ibrahim

   Bryce J. Maynard

Dated: April 25, 2014            /s/ Bassam N. Ibrahim
                                 Signature of Counsel


                                 Bassam N. Ibrahim
                                 Printed Name of Counsel

i

# TABLE OF CONTENTS

Page

I.      STATEMENT OF RELATED CASES ....................................................1

II.     JURISDICTIONAL STATEMENT ........................................................1

III.    STATEMENT OF ISSUES ....................................................................1

IV.     STATEMENT OF THE CASE.................................................................2

        A.     Introduction.................................................................................2

        B.     Adams & Brooks' P-NUTTLES Mark .........................................2

        C.     Morris National's NUTTFLES Mark ...........................................4

        D.     Procedural History .....................................................................5

V.      SUMMARY OF ARGUMENT ...............................................................6

VI.     ARGUMENT ..........................................................................................8

        A.     The Standard of Review for the Board's Factual Findings is
               "Substantial Evidence" ...............................................................8

        B.     The Board Correctly Stated and Applied the Burden of Proof ......9

               1.     The Burden of Proof on a Petitioner in a Cancellation is Identical
                      to that of an Opposer in an Opposition ...............................10

               2.     The Board Did Not Rely on the "Prior User" Rule in Reaching
                      Its Decision.........................................................................13

               3.     There Is No Basis for Overturning the "Prior User" Rule ................15

        C.     The Board Correctly Concluded That the Marks P-NUTTLES and
               NUTTFLES Are Confusingly Similar.........................................18

               1.     The Board Correctly Determined that the Goods, the Channels
                      of Trade, and the Classes of Consumers Are Identical ......................19

2.    The Board Correctly Determined that the Marks P-NUTTLES and NUTFFLES Are Similar in Appearance, Pronunciation, and Commercial Impression ........................................................21

    a.    Morris National's Attempts to Dissect the Marks are Improper...................................................................................21

    b.    The combination of the Term NUT and the Suffix – LES is Highly Distinctive and Clearly Suggests a "Plurality of Nuts" .......................................................................................22

    c.    The Board Correctly Concluded that the Letter "P" at the Beginning of the P-NUTTLES Mark is Not Enough to Distinguish the Marks ..............................................................26

3.    The Board Properly Considered the Fame and Strength of Adams & Brooks' P-NUTTLES Mark in Its Analysis ......................30

    a.    Even if Adams & Brooks' Mark is Not "Famous," This Factor Does Not Weigh Against Adams & Brooks.................30

    b.    The "Number and Nature of Similar Marks in Use on Similar Goods" Does Not Weigh Against Adams & Brooks...33

4.    The Board Did Not Err in Determining that the Other *duPont* Factors Do Not Favor Morris National ...............................................36

    a.    The Conditions of Sale Strongly Support the Board's Finding of a Likelihood of Confusion .....................................37

    b.    The Other *duPont* Factors are Either Irrelevant or Support Adams & Brooks and Do Not Detract from the Likelihood of Confusion.............................................................................39

5.    The Board Correctly Weighed the *duPont* Factors ...........................42

6.    The Board Did Not Err in Denying Morris National's Motion to Amend Its Application ...................................................................43

VII.    CONCLUSION .......................................................................................46

# TABLE OF AUTHORITIES

**Cases**        **Pages**

*Bose Corp. v. QSC Audio Prod., Inc.*
    293 F.3d 1367 (Fed. Cir. 2002).................................................................32

*Bridgestone Americas Tire Operations, LLC. v. Federal Corp.*
    673 F.3d 1330 (Fed. Cir. 2012).................................................................28

*Century 21 Real Estate Corp. v. Century Life of Am.*
    970 F.2d 874 (Fed. Cir. 1992)...................................................14, 15, 28

*Cerverceria Centroamericana, S.A. v. Cerveceria India, Inc.*
    892 F.2d 1021 (Fed. Cir. 1989).................................................................10

*Citigroup Inc. v. Capital City Bank Group, Inc.*
    637 F.3d 1344 (Fed. Cir. 2011)....................................................8, 18, 36

*Coach Serv. Inc. v. Triumph Learning LLC*
    668 F.3d 1356 (Fed. Cir. 2012).................................................................21

*Cold War Museum, Inc. v. Cold War Air Museum, Inc.*
    586 F.3d 1352 (Fed. Cir. 2009)...............................................................9, 12

*Cunningham v. Laser Golf Corp.*
    222 F.3d 943 (Fed. Cir. 2000)...................................... 10, 19, 29, 32, 36

*Dept. of Justice v. Calspan Corp.*
    578 F.2d 295(CCPA 1978) .......................................................................11

*Eli Lilly & Co. v. Natural Answers, Inc.*
    233 F.3d 456 (7th Cir. 2000) ...................................................................40

*Federated Foods, Inc. v. Fort Howard Paper Co.*
    544 F.2d 1098 (CCPA 1976) ...................................................................41

*Giant Food, Inc. v. Nation's Foodservice, Inc.*
    710 F.2d 1565 (Fed. Cir. 1983).................................................................14

*GoTo.com, Inc. v. Walt Disney Co.*
    202 F.3d 1199 (9th Cir. 2000) ...............................................................40

*Hewlett-Packard Co. v. Packard Press, Inc.*
    62 USPQ2d 1001 (Fed. Cir. 2002).......................................................19

*In re Application of Pneumatiques, Caoutchouc Manufacture et Plastiques Kleber-Colombes*
    487 F.2d 918 (1973).............................................................................16

*In re Bayer Aktiengesellschaft*
    488 F.3d 960 (Fed. Cir. 2007)................................................................9

*In re Chatam Int'l Inc.*
    380 F.3d 1340 (Fed. Cir. 2004).......................................................9, 18

*In re E.I. duPont de Nemours & Co.*
    476 F.2d 1357 (CCPA 1973) ...................................................... *passim*

*In re Majestic Distilling Co., Inc.*
    315 F.3d 1311 (Fed. Cir. 2003).......................................................32, 36

*In re Midwest Oil Co.*
    289 F. 1018 (C.A.D.C. 1923)..............................................................16

*In re Shoemaker's Candies, Inc.*
    222 U.S.P.Q. 326 (TTAB 1984) ..........................................................38

*Interstate Brands Corp. v. McKee Foods Corp.*
    53 USPQ2d 1910 (TTAB 2000) ..........................................................40

*Jewelers Vigilance Comm., Inc. v. Ullenberg Corp.*
    853 F.2d 888 (Fed. Cir. 1988)..............................................................39

*Kenner Parker Toys Inc. v Rose Art Indus., Inc.*
    963 F.2d 350 (Fed. Cir. 1992)..............................................................14

*Kimberly-Clark Corp. v. H. Douglas Enter., Ltd.*
    774 F.2d 1144 (Fed. Cir. 1985).......................................................24, 29

*King Candy Co. v. Eunice King's Kitchen, Inc.*
496 F.2d 1400 (CCPA 1974) ...............................................................32

*Lebanon Seaboard Corp. v. R & R Turf Supply Inc.*
101 USPQ2d 1826 (TTAB 2012) .........................................................24

*Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*
799 F.2d 867 (2d Cir. 1986) ................................................................39

*Massey Junior Coll., Inc. v. Fashion Inst. of Tech. (Massey)*
492 F.2d 1399 (CCPA 1978) .........................................................11, 12

*Metro Traffic Control, Inc. v. Shadow Network Inc.*
104 F.3d 336 (Fed. Cir. 1997) ............................................................10

*Midwestern Pet Foods, Inc. v. Societe des Produits Nestle S.A.*
685 F.3d 1046 (Fed. Cir. 2012) .................................................. *passim*

*Olde Tyme Foods, Inc. v. Roundy's Inc.*
961 F.2d 200 (Fed Cir. 1992) .........................................................16, 17

*Palm Bay Imp., Inc. v. Veuve Clicquot Ponsardin Maison Fondee en 1772*
396 F.3d 1369 (Fed. Cir. 2005) .....................................................33, 35

*Paul F. Beich Company v. J & J Oven Company, Inc.*
147 USPQ 162 (TTAB 1965) .............................................................38

*Recot, Inc. v. Becton*
214 F.3d 1322 (Fed. Cir. 2000) ..........................................................37

*San Fernando Elec. Mfg. Co. v. JFD Elec. Components Corp.*
565 F.2d 683 (CCPA 1977) ................................................................13

*Specialty Brands, Inc. v. Coffee Bean Distrib., Inc.*
748 F.2d 669 (Fed. Cir. 1984) ............................................................22

*Spice Islands, Inc. v. Frank Tea & Spice Co.*
505 F.2d 1293 (CCPA 1974) ..............................................................22

*Stone Lion Capital Partners, LP v. Lion Capital LLP*
110 USPQ2d 1157 (Fed. Cir. 2014) ......................................................8

vi

*Storck USA, L.P. v. Farley Candy Co., Inc.*
    785 F. Supp. 730 (N.D. Ill. 1992) ............................................................38

*Tootsie Roll Indust., Inc. v. Sathers, Inc.*
    666 F. Supp. 655 (D. Del. 1987) ..............................................................38

*Top Tobacco, L.P. v. North Atl. Operating Co., Inc.*
    101 USPQ2d 1163 (TTAB 2011) .....................................................23, 35

*Visual Info. Inst., Inc. v. Vicon Indus., Inc.*
    209 USPQ 179 (TTAB 1980) ...................................................................11

*W.D. Byron & Sons, Inc. v. Stein Bros. Mfg. Co.*
    377 F.2d 1001 (CCPA 1967) .......................................................10, 11, 12

## Statutes

15 U.S.C. § 1071(a)(1) ...................................................................................1

## Rules

Trademark Trial and Appeal Board Manual of Procedure
    § 702.04(a) ..............................................................................................11

Fed. R. Civ. P. 56(c) .....................................................................................17

## Other Authorities

J. Thomas McCarthy, <u>McCarthy on Trademarks and Unfair Competition</u>
    (4th ed. 2006) ............................................................................... *passim*

## I.    STATEMENT OF RELATED CASES

There are no related cases.

## II.    JURISDICTIONAL STATEMENT

The Court has appellate jurisdiction over this case pursuant to 15 U.S.C.

§1071(a)(1).

## III.    STATEMENT OF ISSUES

1.    Did the United States Trademark Trial and Appeal Board (the "Board") err in not holding Appellee Adams & Brooks ("Adams & Brooks"), as the petitioner in a cancellation proceeding, to a higher standard of proof than it would hold an opposer in an opposition proceeding?

2.    Did the Board properly state that any doubts in the likelihood of confusion analysis should be resolved against the junior user?

3.    Did the Board correctly conclude that Appellant Morris National, Inc.'s ("Morris National") trademark NUTFFLES (hereinafter the "NUTFFLES Mark") was likely to be confused with Adams & Brooks' previously registered and used trademark P-NUTTLES (hereinafter the "P-NUTTLES Mark")?

4.    Did the Board abuse its discretion in denying Morris National's Motion to Amend its registration for the NUTFFLES Mark to limit the identification of goods?

## IV.   STATEMENT OF THE CASE

### A.   Introduction

This case is an appeal from a decision in a trademark cancellation proceeding before the United States Trademark Trial and Appeal Board.

The Board held, in a decision dated July 23, 2013, that Morris National's NUTFFLES Mark was confusingly similar to Adams & Brooks' previously registered P-NUTTLES Mark, and that Morris National's U.S. Reg. No. 3,719,863 for the NUTFFLES Mark should be cancelled.  A24-25.

### B.   Adams & Brooks' P-NUTTLES Mark

Adams & Brooks is a candy company based in Los Angeles, California. A27-28, A260: 19-23.  Adams & Brooks is the owner of U.S. Reg. Nos. 799,624 and 2,794,401 for the mark P-NUTTLES.  A29-30.  These registrations both cover "nut candies."  *Id*.  Adams & Brooks registered its P-NUTTLES Mark with the U.S. Patent and Trademark Office on November 30, 1965.  A29.  Adams & Brooks' U.S. Reg. Nos. 799,624 and 2,794,401 do not contain any limitations or restrictions as to the channels of trade, the market segment, or the target consumers.  A29-30.

Adams & Brooks has used the P-NUTTLES Mark in commerce in the United States since at least as early as 1965.  *Id;* A268:6-11.  Adams & Brooks has used the mark continuously since that date, a period of over 46 years.  A268:12-17.

Adams & Brooks has sold ███████████████████████████

███████████████████████. ████████. In 2010, Adams & Brooks

sold ████████ worth of products bearing the P-NUTTLES mark. ███████████

█

Adams & Brooks aggressively markets its products bearing the P-NUTTLES

Mark. Adams & Brooks advertises and markets its products through trade

publications, retail circulars, trade shows, its web site, and other methods. A193-

94, A196-97, A200. Adams & Brooks ███████████████████

███████████████████████████████████

████████████████

Adams & Brooks' products are sold to the general public through normal

retail channels for candy, such as grocery stores, supermarkets, and convenience

stores. A274-75. Adams & Brooks sells its P-NUTTLES products at very low

prices. The products are sold in a variety of package sizes, with prices ranging

from 79 cents for a 1.5 ounce package of P-NUTTLES to a $2.49 "value bag"

package. A294- 296.

Adams & Brooks' P-NUTTLES Mark is a unique and highly distinctive

mark in the candy marketplace. Adams & Brooks' President John Brooks testified

that other than Morris National's NUTFFLES Mark, he was not aware of any third

party marks that are similar to P-NUTTLES and that are used in connection with

similar goods.  A301-02.  He also stated that he was not aware of any third-party

candy marks that included the term NUT in connection with the suffix -LES.

A302:13-21.

### C.    Morris National's NUTFFLES Mark

Morris National is a candy company based in Azusa, California.  A26,

A645:20-23.  On December 23, 2008, Morris National filed an intent-to-use

application for the mark NUTFFLES in connection with "chocolate and candy" in

International Class 30.  A50.  Morris National began using the mark on or about

June 29, 2009.  A72.

As with Adams & Brooks' P-NUTTLES products, Morris National sells its

NUTFFLES products through typical channels of trade for candy such as grocery

stores, supermarkets, and convenience stores.  A645-46, A648:16-20.  In fact,

Morris National's NUTFFLES products are sold or have been sold at several of the

same stores as Adams & Brooks' P-NUTTLES products, such as A.J. Wright,

Kraynak's, Sherm's Thunderbird, Dairy Fresh Stores, and Hackney Co-Op.  A599,

A289-90.

Morris National's NUTFFLES products are also sold at extremely low prices

similar to the prices for Adams & Brooks' P-NUTTLES products: either 39 cents

for a single candy, or $1.29 for a package of three candies.  A652:11-16.

### D.    Procedural History

Adams & Brooks first learned of Morris National's use of the NUTFFLES

Mark at a trade show in January of 2010.  A206:4-7, A208-3-10.  Upon learning

that Morris National had registered the NUTFFLES Mark with the U.S. Patent and

Trademark Office, Adams & Brooks promptly filed a Petition for Cancellation on

March 3, 2010, alleging that the NUTFFLES Mark was likely to be confused with

Adams & Brooks' previously used and registered P-NUTTLES Mark.  A82-85.

The Board issued its decision on the cancellation proceeding on July 23,

2013.  A11-25.  The Board ruled in favor of Adams & Brooks, finding that there

was a likelihood of confusion between the marks P-NUTTLES and NUTFFLES

under Section 2(d) of the Lanham Act, and that Morris National's registration for

the NUTFFLES Mark should be cancelled.  *Id.*  The Board based its conclusion on

the multi-factor likelihood of confusion test set forth by this Court's predecessor in

*In re E.I. duPont de Nemours & Co.*, 476 F.2d 1357 (CCPA 1973).  A16.  The

Board considered all of the *duPont* factors, including those that it did not

specifically discuss in its decision.  A24.  The Board concluded that since the

marks were similar, the goods were identical, and the channels of trade and

consumers must be presumed to overlap, the marks were likely to be confused.  *Id*.

Morris National filed a request for reconsideration of the Board's decision

on August 23, 2013.  A1132-52.  On October 2, 2013, the Board denied the request

for reconsideration. A1179-87. Morris National filed its Notice of Appeal on November 25, 2013. A1188-1208.

## V.    SUMMARY OF ARGUMENT

Morris National has demonstrated absolutely no basis for disturbing the Board's decision. Contrary to Morris National's arguments, the applicable burden of proof on a petitioner in a cancellation proceeding is not any higher than that of an opposer in an opposition proceeding. Morris National's arguments on this issue are based on a single, much-criticized case from nearly 50 years ago. This Court's recent precedent is very clear that the same burden of proof – a preponderance of the evidence - applies in both types of proceedings.

The Board correctly stated and applied that burden of proof in this case, concluding that Adams & Brooks had demonstrated, by a preponderance of the evidence, that Morris National's NUTFFLES Mark is likely to be confused with Adams & Brooks' previously registered P-NUTTLES Mark.

Moreover, contrary to Morris National's arguments, the Board did not rely on the "prior user" rule in reaching its decision, as it found that all of the important likelihood of confusion factors either favored Adams & Brooks or were neutral. Even if the Board had relied on this rule to some extent, it would not be improper, since the "prior user" rule has been a cornerstone of this Court's trademark jurisprudence for nearly 100 years.

The Board also did not err in its analysis and weighing of the individual *duPont* likelihood of confusion factors. The Board correctly found that the parties' goods, channels of trade, and target consumers are identical; that the marks P-NUTTLES and NUTFFLES are similar in appearance and pronunciation; and that the marks create the same commercial impression, namely a "plurality of nuts." The Board also did not err in finding that the fame and strength factors did not weigh against Adams & Brooks.

Although Morris National claims that the Board failed to consider several of the *duPont* factors, the decision clearly states that the Board considered all of the factors, even those which it did not discuss. A24. In fact, several of the factors the Board did not discuss, such as the conditions under which purchasers of the relevant goods are made and the extent of potential confusion, clearly favor Adams & Brooks. The purported lack of evidence of actual confusion is clearly irrelevant in light of Morris National's limited use of the NUTFFLES Mark at the time the parties submitted their testimony and evidence.

Finally, the Board did not err in denying Morris National's Motion to Amend its registration to limit the identification of goods. The Board correctly found that the amendment sought by Morris National would not reduce the likelihood of confusion, since Morris National's goods and channels of trade

would still overlap with the goods and channels of trade covered by Adams & Brooks' registration.

Therefore, the Court should affirm the Board's order granting the cancellation of Morris National's U.S. Reg. No. 3,719,863.

## VI. ARGUMENT

### A. The Standard of Review for the Board's Factual Findings is "Substantial Evidence"

This case involves the review of both factual and legal issues. While the Board's legal conclusions are reviewed *de novo*, the standard of review for the Board's factual findings is "substantial evidence." *Stone Lion Capital Partners, LP v. Lion Capital LLP*, 110 USPQ2d 1157, 1160 (Fed. Cir. 2014). Under the "substantial evidence" standard, the Court must affirm the Board's factual determinations "unless they are arbitrary, capricious, an abuse of discretion, or unsupported by substantial evidence." *Citigroup Inc. v. Capital City Bank Group, Inc.*, 637 F.3d 1344, 1349 (Fed. Cir. 2011). Evidence is "substantial" if "a reasonable person might find that the evidentiary record supports the [Board's] conclusion." *Id.* (citations omitted). Moreover, "the [Board's] findings may be supported by substantial evidence even if two inconsistent conclusions can be drawn from the evidence." *Id.* In situations where contradictory conclusions may reasonably be drawn from the evidence, the decision of the Board favoring one conclusion over the other is the type of finding that must be sustained as supported

by substantial evidence.  *In re Bayer Aktiengesellschaft*, 488 F.3d 960, 970 (Fed.

Cir. 2007).

The likelihood of confusion under the Lanham Act is "a legal determination

based upon factual underpinnings."  *In re Chatam Int'l Inc.*, 380 F.3d 1340, 1342

(Fed. Cir. 2004).  Therefore, although the Court reviews the legal determination *de

novo*, the court reviews the Board's determination of the individual *duPont* factors

under the "substantial evidence" standard.  *Id*.

### B.      The Board Correctly Stated and Applied the Burden of Proof

Morris National's main argument is that the Board allegedly erred in i) not

applying a higher standard of proof in the cancellation proceeding than it would in

an opposition; and ii) stating that any doubts should be resolved in favor of the

senior user.  Appellant's Br., at 17.  As these are issues of law, they are reviewed

*de novo*; however, the Board was undoubtedly correct in its statement and

application of the burden of proof.

The Board correctly stated the burden of proof in this case, which is that

"[Adams & Brooks] has the burden to establish that there is a likelihood of

confusion *by a preponderance of the evidence*."  A16 (emphasis added).  The

Board's statement of the burden of proof is identical to that consistently stated by

this Court in cases involving trademark cancellation proceedings.  *See, e.g.*, *Cold

War Museum, Inc. v. Cold War Air Museum, Inc.*, 586 F.3d 1352, 1356 (Fed. Cir.

2009) ("A party seeking to cancel a registration must overcome the registration's

presumption of validity by a preponderance of the evidence."); *Cunningham v.*

*Laser Golf Corp.*, 222 F.3d 943, 951 (Fed. Cir. 2000) ("[Petitioner] had the burden

of proving by a preponderance of the evidence that there was a likelihood of

confusion between the two marks."); *Metro Traffic Control, Inc. v. Shadow*

*Network Inc.*, 104 F.3d 336, 339 (Fed. Cir. 1997) ("A petitioner seeking

cancellation on these grounds bears the burden…by a preponderance of the

evidence.").

### 1. The Burden of Proof on a Petitioner in a Cancellation is Identical to that of an Opposer in an Opposition

Morris National incorrectly asserts that the burden of proof on a petitioner in

a cancellation action is "much heavier" than that of an opposer in an opposition

proceeding. Appellant's Br., at 19. Morris National's argument is based entirely

upon an outdated CCPA case from 1967, *W.D. Byron & Sons, Inc. v. Stein Bros.*

*Mfg. Co.*, 377 F.2d 1001 (CCPA 1967). Subsequent decisions and commentators

have heavily criticized the *Byron & Sons* case and made it very clear that there is

no significant difference between the burden of proof in a cancellation and that in

an opposition proceeding. *See Cerverceria Centroamericana, S.A. v. Cerveceria*

*India, Inc.*, 892 F.2d 1021, 1023 (Fed. Cir. 1989) (stating that comments by prior

courts about a petitioner's "heavy burden" relate to "greater evidentiary

difficulties" in a cancellation proceeding than in an opposition proceeding, and not

to the burden of proof); *Dept. of Justice v. Calspan Corp.*, 578 F.2d 295, 298 n. 6 (CCPA 1978) (stating that the burden of proof is identical in oppositions and cancellations, and criticizing the Board for relying on *Byron & Sons*); *Visual Info. Inst., Inc. v. Vicon Indus., Inc.*, 209 USPQ 179, 190 (TTAB 1980) ("There is not a heavier burden of proof in a cancellation proceeding than in an opposition. The party plaintiff in either proceeding is under the same burden of establishing his claim by a preponderance of the evidence."); J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 20:64 (4th ed. 2006) ("The burden of proof on the party in the position of plaintiff is the same in both Oppositions and Petitions to Cancel: a preponderance of the evidence."); Trademark Board Manual of Procedure ("TBMP") § 702.04(a) ("In either an opposition or cancellation proceeding, the burden of proof remains with the plaintiff, who must establish its case by a preponderance of the evidence.").

Morris National misleadingly quotes *Massey Junior Coll., Inc. v. Fashion Inst. of Tech. (Massey)*, 492 F.2d 1399, 1402-03 (CCPA 1978) as stating that "the petitioner in a cancellation proceeding bears a much heavier burden of proof than the opposer in an opposition proceeding." However, Morris National fails to point out that this language in *Massey* was merely quoting the CCPA's prior decision in *Byron & Sons*. In fact, the *Massey* court went on to strongly criticize the reasoning

of the *Byron & Sons* decision, which happens to be the same reasoning relied upon

by Morris National in its brief:

> It can, of course, be argued that, because a registrant's certificate is prima facie evidence of "exclusive right to use," there is a presumption of absence of 'likelihood of confusion,' so that a petitioner bears a 'heavier' burden on this point than an opposer, who has no such presumption to overcome. However, *there is nothing in [the Lanham Act] to support this view*. In one case, the opposer would have to produce sufficient evidence to prove "likelihood of confusion." In the other case, the petitioner would be required to produce sufficient evidence to rebut a presumption of absence of "likelihood of confusion." Without some statutory direction, a preponderance of the evidence will usually be "sufficient" in both cases. From the foregoing, we conclude that when the issue of "likelihood of confusion" is involved, the legislative purpose is not to be achieved through some general rule such as that stated in the *Byron & Sons* case, supra, regarding the *degree* of burden of proof depending on whether there is an opposition of [sic] cancellation proceeding.

*Massey*, 492 F.2d 1399, 1403-04 (emphasis added).

Morris National also cites a more recent Federal Circuit case, *Cold War*

*Museum, Inc. v. Cold War Air Museum, Inc.*, 586 F.3d 1352 (Fed. Cir. 2009),

which discussed the burden of proof that applies in cancellation proceedings.

However, the *Cold War Museum* case merely clarified that a party seeking

cancellation must overcome the presumption of validity of a registration by a

preponderance of the evidence; it did not state that there was any higher level of

proof required for establishing a likelihood of confusion in a cancellation than in

an opposition. *Id*. at 1358-59.

Therefore, the Board correctly stated and applied the burden of proof in this case, which is that Adams & Brooks is required to establish a likelihood of confusion by a preponderance of the evidence.

### 2.    The Board Did Not Rely on the "Prior User" Rule in Reaching Its Decision

Morris National next attacks the Board for briefly stating the general rule that "to the extent any of the points argued by respondent may raise a doubt about our finding of a likelihood of confusion, we would resolve that doubt, as we must, in favor of petitioner as the prior user."  Appellant's Br., at 21-29 (quoting A24). This is a basic axiom of trademark law in this Circuit, which is cited by the Board in nearly every case involving a likelihood of confusion.  *See San Fernando Elec. Mfg. Co. v. JFD Elec. Components Corp.*, 565 F.2d 683, 684 (CCPA 1977) ("It is too well settled as an axiom of trademark law to require citation of precedent that on the statutory issue involved here doubts are to be resolved against the newcomer and in favor of the prior user."); McCarthy, *supra*, § 23:64 ("[T]his rule has long been followed by the Court of Customs and Patent Appeals and its successor, the Federal Circuit.").

Morris National contends that the cases in which the Federal Circuit has repeatedly stated this rule[1] are inapplicable because those were opposition cases rather than cancellation proceedings. However, as Morris National admits later in its brief, the Federal Circuit and CCPA have stated this rule in the context of cancellation proceedings on several occasions as well. Appellant's Br., at 25-26.

More importantly, however, the "prior user" rule was not of any particular importance in this case. Morris National repeatedly implies that the Board had significant doubts about the outcome in this case and resolved these doubts in favor of Adams & Brooks solely because of this "prior user" rule; according to Morris National, the Board used the rule to "tip the scales" in favor of Adams & Brooks Appellant's Br., at 28.

However, there is absolutely no evidence that the "prior user" rule played any significant role in the Board's decision. The Board mentioned the rule once in its decision, in its general summary concluding that there was a likelihood of confusion. A24. The Board never stated, in its discussion of the individual *duPont* factors, that it was weighing any specific factors in favor of Adams & Brooks solely because of the "prior user" rule. This is not a case like *Century 21*, in which

---

[1] These cases include *Century 21 Real Estate Corp. v. Century Life of Am.*, 970 F.2d 874, 878 (Fed. Cir. 1992); *Giant Food, Inc. v. Nation's Foodservice, Inc.*, 710 F.2d 1565, 1571 (Fed. Cir. 1983); and *Kenner Parker Toys Inc. v Rose Art Indus., Inc.*, 963 F.2d 350, 355 (Fed. Cir. 1992), among others.

the Board specifically stated that it was applying the "prior user" rule because

"th[e] case was 'difficult to resolve.'" *Century 21*, 970 F.2d at 878. It is clear that

the Board's passing reference to the "prior user" rule in the present case was

merely part of a boilerplate recitation of the standard for establishing a likelihood

of confusion before the Board.

Therefore, all of Morris National's arguments regarding the "prior user" rule

are essentially irrelevant. However, Adams & Brooks will briefly address these

arguments in order to demonstrate the frivolous nature of Morris National's

position that this rule should be disregarded or reversed.

### 3. There Is No Basis for Overturning the "Prior User" Rule

Morris National is brazenly asking this Court to overturn the long-

established rule that any doubts in the likelihood of confusion analysis should be

resolved in favor of the senior user, at least in cancellation proceedings. Although

Morris National claims that there is "considerable confusion as to the law of this

Circuit" regarding the "prior user" rule, Appellant's Br., at 24, Morris National has

not cited any cases evidencing this purported 'confusion.' In fact, the rule has

been consistently followed by the Federal Circuit and its predecessor courts for

nearly 100 years.[2]  As Professor McCarthy notes, "as early as 1930, the CCPA

could refer to [the prior user rule] as a 'familiar rule.'" McCarthy, *supra*, § 23:64.

Morris National's sole argument for overturning this long-established rule is

that it purportedly "fail[s] to contemplate - and ultimately to square with – the

rule's effective nullification of the statutory presumption of a trademark

registration's validity in a cancellation proceeding and the movant's burden by a

preponderance of the evidence to demonstrate grounds for cancellation."

Appellant's Br., at 22.  However, this argument is based on Morris National's

flawed position that the burden of proof on a petitioner in a cancellation

proceeding is higher than that on an opposer.  As discussed above, this position is

clearly incorrect as a matter of law.

Morris National also relies on *Olde Tyme Foods, Inc. v. Roundy's Inc.*, 961

F.2d 200, 205 (Fed Cir. 1992), in which the court reversed the Board's finding of a

likelihood of confusion in a cancellation proceeding and stated that "the 'tie-

breaking rule' is not a presumption or a substitute for evidence."  However, that

case involved an appeal from a finding of summary judgment in favor of

---

[2]  *See In re Midwest Oil Co.*, 289 F. 1018, 1019 (C.A.D.C. 1923) ("The benefit of
[the] doubt must be given to the prior appropriation."); *cf. In re Application of
Pneumatiques, Caoutchouc Manufacture et Plastiques Kleber-Colombes*, 487 F.2d
918, 920 (C.C.P.A. 1973) ("[T]he rule that doubt as to likelihood of confusion
shall be resolved against the newcomer has been applied…from an early time.").

petitioner, in which a much higher burden of proof applies,[3] and not to a final decision based upon a complete record, in which a petitioner must merely prevail by a preponderance of the evidence. The court's reversal in *Olde Tyme Foods* was based upon the Board's failure to view the evidence in the light most favorable to the applicant as the non-moving party. *Id.* at 205. In fact, the court specifically stated that "a reasonable fact finder could have found for [the petitioner] on a number of *duPont* factors underlying the legal conclusion of likelihood of confusion," suggesting that it may have affirmed the Board if its decision was issued after a full hearing, but added that the evidence in favor of the petitioner was not "so indisputable as to merit summary judgment." *Id.* Therefore, the *Olde Tyme Foods* decision does not provide any support for Morris National's criticisms of the "prior user" rule.

In summary, Morris National has not provided any justification for overturning the long-established rule that any doubts in the likelihood of confusion analysis should be resolved in favor of the senior user, and in any event the Board did not rely upon this rule in reaching its decision.

---

[3] The movant on a summary judgment motion must show "that there is no genuine issue as to any material fact and that [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

## C.  The Board Correctly Concluded That the Marks P-NUTTLES and NUTFFLES Are Confusingly Similar

Morris National also disagrees with the Board's conclusion that Morris National's NUTFFLES Mark is likely to be confused with Adams & Brooks' previously registered and used P-NUTTLES Mark.  However, there is no basis for overturning the Board's decision on this issue.  The Board's analysis of the likelihood of confusion factors thoroughly and carefully considered all of the *duPont* factors, correctly concluding that there is a likelihood of confusion between NUTFFLES and P-NUTTLES in light of the identical nature of the goods, the channels of trade, and the classes of consumers; the similarities in the appearance, pronunciation, and commercial impressions of the marks; and the lack of any factors weighing in favor of Morris National.  A24.

As discussed above, the Board's determinations of the individual factors are factual findings subject to "substantial evidence" review.  *In re Chatam Int'l.,* 380 F.3d at 1342.  Therefore, these findings must be affirmed" if "a reasonable person might find that the evidentiary record supports the [Board's] conclusion." *Citigroup*, 637 F.3d at 1349.

18

### 1. The Board Correctly Determined that the Goods, the Channels of Trade, and the Classes of Consumers Are Identical

The first *duPont* factor considered by the Board was the similarities in the goods, the channels of trade, and the classes of consumers, all of which the Board concluded were identical. A16-18.

This conclusion was undoubtedly correct. Adams & Brooks' P-NUTTLES registration covers "nut candies," while the NUTFFLES registration owned by Morris National covers "chocolate and candy." These products obviously directly overlap; as the Board explained, "[Morris National's] 'candy' must be read to include all types of candy, including [Adams & Brooks'] more narrowly defined 'nut candies.' Thus, [the parties'] goods are, in part, legally identical." A17. Furthermore, it must be presumed "that [the parties'] goods move in all channels of trade normal for those goods, and that they are available to all classes of purchasers for those goods." A18. The Board's conclusion was supported by the longstanding precedent of this Court that the similarity of goods and services must be determined on the basis of the goods listed in the parties' respective registrations, and that any arguments by the parties to the effect that the actual goods in the marketplace are distinguishable are irrelevant. *Hewlett-Packard Co. v. Packard Press, Inc.*, 281 F.3d 1261, 1267-68 (Fed. Cir. 2002); *Cunningham*, 222 F.3d at 948.

19

Morris National expended a great deal of time and energy during the Board proceeding attempting to argue that the channels of trade and classes of consumers were distinguishable, since Morris National's products were supposedly sold in the "candy aisle" whereas Adams & Brooks' P-NUTTLES products were purportedly sold in a separate and distinct "snack aisle."  Morris National had no evidence to support this argument, which was summarily dismissed by the Board:

> [N]either [Adams & Brooks'] nor [Morris National's] goods recite any restrictions as to type or price range; the trade channels in which they are offered; or the consumer to whom they are marketed.  Thus, [Morris National's] extensive argument and evidence that the trade channels and conditions of sale are different is misplaced…[W]here the goods are identical, we must presume overlapping trade channels and classes of purchasers.

A17-18.

Morris National has now completely dropped these arguments in its appeal to this Court.  Instead, Morris National's only argument with respect to the parties' goods, channels of trade, and classes of consumers is that the Board purportedly erred in finding that Morris National's requested amendment to its registration would not be sufficient to distinguish these elements.  Appellant's Br., at 39-43. Adams & Brooks will address the Motion to Amend later in this brief; however, for purposes of the likelihood of confusion analysis between Morris National's NUTFFLES registration and Adams & Brooks' P-NUTTLES registration, it is

undisputed that the goods, channels of trade, and classes of consumers are identical, which weighs strongly in favor of a likelihood of confusion.

> **2.    The Board Correctly Determined that the Marks P-NUTTLES and NUTFFLES Are Similar in Appearance, Pronunciation, and Commercial Impression**

The Board also correctly concluded that the marks P-NUTTLES and NUTFFLES are similar as to appearance, sound, connotation, and commercial impression, stating that "[w]hen we view the marks in their entireties, we find that the marks have a similar appearance, similar elements of sounds, and similar connotation and commercial impression in that they suggest the goods contain a plurality of nuts." A20. This conclusion was based on substantial evidence, and Morris National's attempts to distinguish the marks in its brief are without merit.

> **a.    Morris National's Attempts to Dissect the Marks Are Improper**

Morris National's analysis of this factor completely fails to take into account the axiom that the marks must be considered in their entireties, and that the dissection of the marks into their individual components is improper. *Coach Serv. Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1368 (Fed. Cir. 2012).

According to Morris National, the term NUT is merely descriptive, and the fact that both marks share this term is insufficient to support a finding of confusing similarity. Appellant's Brief, at 30. However, Morris National's argument that the Board should have simply ignored the term NUT in its analysis is clearly incorrect

as a matter of law.  *See Specialty Brands, Inc. v. Coffee Bean Distrib., Inc.*, 748

F.2d 669, 673 (Fed. Cir. 1984) ("Arguments to the effect that one portion of a mark

possesses no trademark significance leading to a direct comparison between only

what remains is an erroneous approach."); *Spice Islands, Inc. v. Frank Tea & Spice

Co.*, 505 F.2d 1293, 1296 (CCPA 1974) (finding the marks SPICE TREE and

SPICE ISLANDS confusingly similar, despite the descriptive nature of the term

SPICE).

Furthermore, all of the cases cited by Morris National involve marks which

shared one clearly descriptive term and were otherwise entirely dissimilar.  The

marks at issue in those cases, such as PECAN SANDIES vs. PECAN SHORTIES,

BEER NUTS vs. SCHAPPS NUTS, and BURGER CHEF v. SANDWICH CHEF,

are obviously much less similar than P-NUTTLES and NUTFFLES.  Appellant's

Br., at 31.

> **b.    The Combination of the Term NUT and the Suffix –
> LES is Highly Distinctive and Clearly Suggests a
> "Plurality of Nuts"**

Furthermore, contrary to Morris National's arguments, the term NUT is not

the only element shared by the marks at issue in this case.  The marks also share

the suffix -LES, which the Board found "suggest[s] a plurality."  A19.  The Board

properly determined that combination of these elements suggests a product which

contains a plurality of nuts, and that this commercial impression is essentially the same between the two marks.  A20.

Moreover, the marks at issue in this case are basically the <u>only</u> marks known to be in use for candy which contain both of these elements.  Morris National was only able to identify one other purported mark containing **both** the term NUT and the suffix –LES.  That mark is NUTIBLES.  However, Morris National was unable to provide any evidence showing commercial use of this mark (aside from a single web site printout) or that consumers recognize the mark.  In fact, despite 40 years of industry experience, Morris National's President testified that he had never seen the NUTIBLES products for sale, or displayed at trade shows, and that he only learned of NUTIBLES when doing research in connection with this case.  A645:8-11, A696-97.  Without evidence of actual use and commercial strength, the NUTIBLES registration itself is worthless and does not detract from the distinctiveness of Adams & Brooks' mark.  *See Top Tobacco, L.P. v. North Atl. Operating Co., Inc.*, 101 USPQ2d 1163, 1171 (TTAB 2011) (disregarding evidence of third-party use of similar marks where it was "not accompanied by any other evidence indicating the length of time said marks have been in use, the degree of exposure, or the popularity of such marks vis-à-vis the relevant purchasing public").

23

The fact that the combination of the letters NUT and the suffix -LES is not commonly used in connection with candy lends further support to the Board's conclusion that consumers are highly likely to confuse Morris National's NUTFFLES Mark with Adams & Brooks' P-NUTTLES Mark.  As this Court stated in finding the marks HUGGIES and DOUGIES confusingly similar for diapers:

> Another factor favoring [opposer] is that in the field of disposable diapers, only appellant had used (prior to appellee's use of DOUGIES) a short, two syllable mark ending in "IES."  There are no other [marks] of that type with that suffix – except for DOUGIES.

*Kimberly-Clark Corp. v. H. Douglas Enter., Ltd.*, 774 F.2d 1144, 1147 (Fed. Cir. 1985); *see also Lebanon Seaboard Corp. v. R & R Turf Supply Inc*., 101 USPQ2d 1826, 1831-32 (TTAB 2012) ("[O]pposer's mark TRIFECTA is the only mark containing the letter string 'FECTA' registered for grass seed…[TRIFECTA] is a strong mark, and the registration is entitled to a broad scope of protection.").

The same reasoning is true here; Morris National's registration of a mark containing both the term NUT- and the suffix -LES is much more likely to create a likelihood of confusion with Adams & Brooks' P-NUTTLES Mark than if this combination was commonplace in the candy market.

Rather than the cases cited by Morris National, a far more relevant (and recent) case is this Court's decision in *Midwestern Pet Foods, Inc. v. Societe des*

*Produits Nestle S.A.*, 685 F.3d 1046 (Fed. Cir. 2012). In *Midwestern Pet Foods*, the Court upheld the Board's finding that the marks BEGGIN' STRIPS and WAGGIN' STRIPS were confusingly similar for dog treats. As in this case, the marks shared a term that could be considered descriptive (STRIPS), and both marks had terms (WAGGIN' and BEGGIN') which created similar commercial impressions. As the court stated, both WAGGIN' and BEGGIN' "suggest dog behavior, and in particular both convey… the excitement exhibited by dogs during feeding." *Id*. at 1053. Therefore, the court correctly concluded that the marks created essentially the same commercial impression. *Id*.

The same logic should be applied in analyzing the P-NUTTLES and NUTFFLES marks. Even if the term NUT is considered descriptive, the combination of this term with the suffix –LES in both marks clearly creates the impression of a plurality of nuts, which is essentially the same in both marks.

Morris National also argues that the Board erred in finding the commercial impressions of the marks similar because Adams & Brooks' P-NUTTLES Mark purportedly suggests a product cooked in kettles, whereas Morris National's NUTFFLES Mark purportedly suggests chocolate truffles. Appellant's Br., at 34. This is a major stretch by Morris National, and there is no evidence for these assertions in the record. However, even if some undefined and unsubstantiated class of consumers were to share these alternative interpretations of the marks, the

Board was undoubtedly correct in finding that the majority of consumers would interpret both marks as referring to products with a plurality of nuts. *See Midwestern Pet Foods*, 685 F.3d at 1053 (stating that although "the mark BEGGIN' STRIPS also suggests 'bacon strips' to some consumers, the Board reasonably concluded that the implicit reference to 'bacon' [in the registrant's mark] did not detract from the similarity of the two marks in both sound and meaning").

Therefore, the Board did not err in finding that both marks had the same commercial impression, namely a "plurality of nuts."

**c.  The Board Correctly Concluded that the Letter "P" at the Beginning of the P-NUTTLES Mark is Not Enough to Distinguish the Marks**

Morris National also argues that the Board "erroneously disregarded" the letter "P" at the beginning of Adams & Brooks' P-NUTTLES Mark, alleging that this single letter is sufficient for consumers to distinguish the marks. Appellant's Br., at 36-38. However, the Board stated that while the presence of the letter "P" in the P-NUTTLES Mark is "the most significant difference between the marks," this additional letter is "of limited significance in terms of connotation." A19-20. According to the Board, even if consumers interpret the use of the letter "P" in conjunction with the term "NUT" as suggesting peanuts, the mark would still suggest a plurality of peanuts, which creates a commercial impression nearly

26

identical to that of the NUTFFLES Mark, i.e. a mark suggesting a plurality of nuts.

*Id.* As the Board explained in denying Morris National's request for

reconsideration:

> Contrary to [Morris National's] argument, the Board recognized
> that the letter "P" in [Adams & Brooks'] marks was a significant
> difference, but discounted the overall impact relative to NUTTLES
> and NUTFFLES inasmuch as all of the marks suggest that they
> contain nuts.

A1182.

Adams & Brooks disagrees with the Board's suggestion that the inclusion of

the letter "P" will be interpreted by consumers as a reference to peanuts, since

many of Petitioner's P-NUTTLES varieties (such as almond P-NUTTLES, cashew

P-NUTTLES, and sunflower P-NUTTLES) do not even contain peanuts.  A268-69.

Regardless, the Board was undoubtedly correct that the addition of this one letter

does not significantly alter the appearances, pronunciation, and commercial

impressions of the respective marks.

As many courts have noted, the similarities of marks are not evaluated based

upon a detailed side-by-side comparison, but rather on "whether they are

sufficiently similar in their overall commercial impression." *Midwestern Pet

Foods,* 685 F.3d at 1053.  As Professor McCarthy has explained, courts should not

examine the marks at issue "with a microscope to find the differences, for this is

not the way the average purchaser views the marks.  To the average buyer, the

points of similarity are more important than numerous points of difference." McCarthy, *supra*, §23:41.

Moreover, this Court has stated that the degree of similarity between the marks must be viewed "through the lens of the other *duPont* factors." *Century 21 Real Estate*, 970 F.2d at 876. This means that a lower degree of similarity between the marks is necessary to support a finding of likelihood of confusion than that would be required if the goods were dissimilar. As this Court recently explained in finding the mark MILANZA confusingly similar to POTENZA and TURANZA, "[e]xact identity is not necessary to generate confusion as to source of similarly-marked products." *Bridgestone Americas Tire Operations, LLC. v. Federal Corp.*, 673 F.3d 1330, 1337 (Fed. Cir. 2012); *see also Century 21*, 970 F.2d at 877 ("When marks would appear on virtually identical goods or services, the degree of similarity necessary to support a conclusion of likely confusion declines.").

There have been numerous cases in which this Court has found marks with much more significant differences than P-NUTTLES and NUTFFLES to be confusingly similar where the marks are used in connection with identical products. *See Midwestern Pet Foods*, 685 F.3d at 1053 (finding BEGGING STRIPS and WAGGIN' STRIPS confusingly similar for dog treats); *Bridgestone Americas*, 673 F.3d at 1337 (finding MILANZA confusingly similar to POTENZA

and TURANZA for tires); *Kimberly-Clark Corp.*, 774 F.2d at 1146 (finding

HUGGIES and DOUGIES confusingly similar for diapers).

In addition to the commercial impressions, Morris National also argues that

the letter "P" at the beginning of P-NUTTLES is sufficient to distinguish the

respective pronunciations of the parties' marks. However, the fact that the few

letters of the marks may be slightly different does not preclude a finding that the

marks are highly similar in sound and pronunciation. *See Midwestern Pet Foods*,

685 F.3d at 1053 (finding that BEGGING STRIPS and WAGGIN' STRIPS have

"generally similar pronunciations, cadences, and intonations"); *Kimberly-Clark*

*Corp.*, 774 F.2d at 1146 (stating that "HUGGIES and DOUGIES sound much

alike").

In conclusion, the Board's finding that the marks P-NUTTLES and

NUTFFLES are similar is a factual determination, which is supported by

substantial evidence. *See Cunningham*, 222 F.3d at 947 (stating that the similarity

of the marks "concerns a factual finding, and there is substantial evidence to

support's the Board's finding that the marks [LASER and LASERSWING ] are

similar"). A reasonable person could certainly find that the evidentiary record

supports the Board's conclusion that the marks P-NUTTLES and NUTFFLES are

similar; therefore, the Board's determination must be affirmed.

### 3. The Board Properly Considered the Fame and Strength of Adams & Brooks' P-NUTTLES Mark in Its Analysis

Morris National further argues that the Board erred in failing to weigh the fame and strength of the P-NUTTLES mark against Adams & Brooks. Appellant's Br., at 46-50. The Board found that these factors were "neutral" in the likelihood of confusion analysis. A22-24. Adams & Brooks believes that the Board should have weighed these factors in favor of Adams & Brooks in light of its 40+ years of continuous use of the P-NUTTLES Mark, ███████████████████████████, and the lack of any relevant, similar third party marks. However, at the very least, it is clear that the Board did not err by deciding not to weigh these factors in favor of Morris National.

### a. Even if Adams & Brooks' Mark is Not "Famous," This Factor Does Not Weigh Against Adams & Brooks

Contrary to Morris National's arguments, Adams & Brooks submitted significant evidence demonstrating the commercial strength of its P-NUTTLES Mark. Adams & Brooks' witnesses testified that Adams & Brooks had been selling products bearing the P-NUTTLES Mark since 1965, that Adams & Brooks had sold ████████████████████████████████████

██████████████████████████████████████

███████████████████████████████

Morris National argues that ███████████████████████████████
███████████████████████ Appellant's Br., at 47.  However, even if Adams

& Brooks' P-NUTTLES Mark is not as famous as M&M's and some other candy

marks, its longstanding use, substantial advertising expenditures, and other factors

still make P-NUTTLES a highly distinctive mark entitled to a broad scope of

protection under this Court's precedent.  *See Midwestern Pet Foods*, 685 F.3d at

1052-53 (concluding that although BEGGIN' STRIPS was not a "famous mark," it

was entitled to a broad scope of protection due to nationwide use since 1988 and

considerable sums expended on advertising).

The Board found that although Adams & Brooks' evidence showed "some

degree of consumer recognition, [it] does not show that the P-NUTTLES Mark has

become famous for purposes of likelihood of confusion."  A22.  As noted above,

Adams & Brooks disagrees with the Board's finding that the mark is not famous;

however, even if the mark is not famous, the Board was correct in not weighing

this factor against Adams & Brooks.

Morris National argues that this factor "should have been weighed *against*

A&B and in favor of Morris."  Appellant's Br., at 46.  However, while a showing

of fame strongly supports a finding of a likelihood of confusion, the absence of

fame does not generally weigh against a likelihood of confusion.  This factor is

typically judged as irrelevant or neutral when the senior user's mark is not famous,

since even non-famous marks are entitled to protection against confusingly similar marks. *See Cunningham*, 222 F.3d at 949 (approving the Board's conclusion that "a mark need not be 'famous' in order to be entitled to protection," and stating that "even if the Board had ignored…the absence of fame, it would not have resulted in any harm"). Morris National's position would effectively mean that only the owners of famous marks could prevent or cancel the registration of similar marks, and there is no support for this position in the Lanham Act or in this Court's precedent. *See In re Majestic Distilling Co., Inc.*, 315 F.3d 1311, 1317 (Fed. Cir. 2003) ("Although we have previously held that the fame of a registered mark is relevant to likelihood of confusion, we decline to establish the converse rule that likelihood of confusion is precluded by a registered mark's not being famous") (internal citations omitted); *King Candy Co. v. Eunice King's Kitchen, Inc.*, 496 F.2d 1400, 1401 (CCPA 1974) (recognizing that likelihood of confusion is to be avoided between all types of marks, not merely between strong marks).

Finally, Morris National misinterprets the Court's decision in *Bosold tye Corp. v. QSC Audio Prod., Inc.*, 293 F.3d 1367, 1374 (Fed. Cir. 2002), by suggesting that Adams & Brooks' failure to provide survey evidence means that this factor should be weighed against Adams & Brooks. To the contrary, the *Bose* Court acknowledged:

> As to the absence of any consumer surveys, we note that a footnote to the Board's own statement recognizes that direct evidence, such

as surveys, is not "required in order to determine whether a mark is famous." Indeed, as noted above, virtually all of our precedent attributing fame to a mark has done so through indirect evidence of the extent to which a mark has earned fame in the consumer marketplace.

*Id.* Therefore, the Board did not err in concluding that the fame factor did not favor Morris National.

### b. The "Number and Nature of Similar Marks in Use on Similar Goods" Does Not Weigh Against Adams & Brooks

The sixth *duPont* factor, which the Board analyzed under the heading of "Strength of the marks" (A22), is typically referred to by this Court as "the number and nature of similar marks in use on similar goods." *DuPont*, 476 F.2d at 1361; *Palm Bay Imp., Inc. v. Veuve Clicquot Ponsardin Maison Fondee en 1772*, 396 F.3d 1369, 1373 (Fed. Cir. 2005).

Morris National identified several third-party marks that it contends diminish the strength of Adams & Brooks' P-NUTTLES Mark. However, the Board correctly disregarded most of these purported third-party marks, since these marks either cover goods or services unrelated to candy, or else are clearly dissimilar to the marks at issue in this proceeding. A22-23. With regard to the one potentially similar candy mark, NUTIBLES, the Board correctly concluded that this mark was less similar to Adams & Brooks' P-NUTTLES Mark than is Morris National's NUTFFLES Mark. A24. As with the other *duPont* factors, the Board's

33

factual findings on the number and nature of similar marks are supported by substantial evidence and should be affirmed.

The majority of the marks cited by Morris National in its Brief, such as PEANUT CHEWS, NUTRAGEOUS, and TURTLES, Appellant's Br. at 48, are not at all similar to P-NUTTLES and do not detract from the strength of Adams & Brooks' P-NUTTLES Mark. *See Midwestern Pet Foods*, 685 F.3d at 1053-54 (disregarding evidence of third party marks BARK N' BAC'N, WAGGIN' TRAIN BRAND WOOFLES, and MINI BACON FLAVOR STRIPS as not relevant to case involving marks WAGGIN' STRIPS and BEGGIN' STRIPS). Appellant's Br., at 48. The Board was undoubtedly correct in disregarding these marks.

Although two of the marks, P.NUTTY and P-NUT POPS, could be considered somewhat similar to P-NUTTLES, these marks cover "ice cream" and "edible dog treats," respectively, and the Board correctly found them to be "of little use in determining the strength of the marks at issue." A23; *see Midwestern Pet Foods*, 685 F.3d at 1053-54 (disregarding evidence of third party marks used for animal leashes or pet grooming services as not relevant to case involving marks used on pet treats).

The only mark with any similarities to P-NUTTLES and NUTFFLES which is potentially used on relevant goods is NUTIBLES. The two registrations for this mark cover "processed nuts, Jordan almonds, roasted nuts, sugar coated peanuts,

and prepared pistachios and chic peas," and "licorice mints," respectively. A978-988. However, Morris National was never able to show that there was any significant usage of the mark (aside from a single web site printout), or that there was any consumer recognition of the mark. As noted above, Morris National's own President, Gerald Morris, testified that he had never even seen the NUTIBLES products for sale or displayed at trade shows, and that he had only learned of NUTIBLES when doing research in connection with this case. A645:8-11, A696-97.

As this Court stated in the *Palm Bay Imports* case, "the probative value of third-party trademarks depends entirely upon their usage." *Palm Bay Imports*, 396 F.3d at 1373. "Where the record includes no evidence about the extent of third-party uses…the probative value of this evidence is thus minimal." *Id*. at 1373-74 (citations omitted); *see also Top Tobacco,*101 USPQ2d at 1171 (disregarding evidence of third party use of similar marks where it was "not accompanied by any other evidence indicating the length of time said marks have been in use, the degree of exposure, or the popularity of such marks vis-à-vis the relevant purchasing public").

Therefore, as Morris National did not submit any evidence of the extent to which the NUTIBLES mark is used, the Board arguably erred in according <u>any</u> value to the NUTIBLES mark; however, the Board was undoubtedly correct in its

finding that this single mark did not diminish the strength of Adams & Brooks' P-NUTTLES Mark or the degree of similarity between NUTFFLES and P-NUTTLES. *See Midwestern Pet Foods*, 685 F.3d at 1053-54 ("The Board…properly found Midwestern's evidence of third-party use unpersuasive.").

Therefore, the Board did not err in finding that the number and nature of similar marks in use on similar goods did not favor Morris National; if anything, the Board should have found that this factor favored Adams & Brooks in light of the lack of any evidence of significant use of relevant third-party marks.

### 4.   The Board Did Not Err in Determining that the Other *duPont* Factors Do Not Favor Morris National

Morris National also argues that the Board failed to consider several of the other *duPont* factors, particularly potential confusion, actual confusion, and intentional copying. Appellant's Br., at 50-51. Morris National's argument is factually incorrect, as the Board specifically stated that it had considered <u>all</u> of the *duPont* factors, including those that it did not discuss in its opinion. A24. There is nothing improper about the Board's decision not to specifically discuss every factor, as not all of the *duPont* factors are relevant in every case. *In re Majestic Distilling Co., Inc.*, 315 F.3d at 1315. Moreover, as this Court has recently stated, the [Board] is not required to discuss every *duPont* factor. *Citigroup*, 637 F.3d at 1354-55; *see also Cunningham*, 222 F.3d at 947 ("[I]t is sufficient, under the

*DuPont* analysis, for the Board to give some indication that it has considered the factors, and that it need not discuss each of them.").

### a. The Conditions of Sale Strongly Support the Board's Finding of a Likelihood of Confusion

In fact, several of the *duPont* factors that the Board did not specifically discuss actually weigh strongly in favor of Adams & Brooks, and further demonstrate the high likelihood of confusion between the marks in this case. One particular factor that was not discussed in the Board's opinion, but which is highly relevant to the likelihood of confusion in this case, is "the conditions under which and buyers to whom sales are made." *DuPont*, 476 F.2d at 1361. As this Court has explained, "when products are relatively low-priced and subject to impulse buying, the risk of likelihood of confusion increases because purchasers of such products are held to a lesser standard of purchasing care." *Recot, Inc. v. Becton*, 214 F.3d 1322, 1329 (Fed. Cir. 2000). This is precisely the type of case involving low-price, impulse buy products in which confusion is significantly more likely than in a case involving higher-priced products.

The record in this case shows that both parties' candy products are sold at extremely low prices. Adams & Brooks' P-NUTTLES products are sold at a variety of low prices depending upon the size of the package, such as 1.5 ounce package of P-NUTTLES for 79 cents, a three ounce package for 99 cents, and a "value bag" package sold at $2.49. A294-296. Morris National's NUTFFLES

products are sold in only two package sizes, a single piece that retails for 39 cents, and a four-piece package that sells for $1.29. A652:11-16.. Furthermore, Adams & Brooks' President and Morris National's President agreed that candy is usually or sometimes an 'impulse buy' product. A291-292; A703-704.

Courts have consistently held that consumers are more likely to be confused when the products at issue are low-priced and subject to impulse buys, and several cases have specifically mentioned candy as just the type of low-priced impulse buy product for which confusion is more likely. As one court explained:

> [C]andy products are arguably one of the strongest impulse items that consumers purchase. The purchase decision is made in a matter of five to eight seconds. Thus, little careful or reflective thought and deliberation go into such a purchase.

*Storck USA, L.P. v. Farley Candy Co., Inc*., 785 F. Supp. 730, 734-35 (N.D. Ill. 1992); *see also Tootsie Roll Indust., Inc. v. Sathers, Inc.,* 666 F. Supp. 655, 659 (D. Del. 1987) (stating that candy products "are 'impulse items' frequently purchased by harried shoppers… In such a context, the likelihood of confusion is substantial"); *In re Shoemaker's Candies, Inc*., 222 USPQ 326, 328 (TTAB 1984) (stating that candy is a low cost impulse type item which would not ordinarily be purchased with a great degree of care); *Paul F. Beich Company v. J & J Oven Company, Inc*., 147 USPQ 162, 164 (TTAB 1965) (noting that candy falls within the category of snack items which generally are purchased on impulse with little or no discrimination).

38

Therefore, this factor also strongly supports the Board's conclusion of a likelihood of confusion. *See Midwestern Pet Foods*, 685 F.3d at 1053 (finding the Board's conclusion of a likelihood of confusion supported by substantial evidence where the products were "inexpensive items that would be purchased by ordinary consumers").

> **b.    The Other *duPont* Factors are Either Irrelevant or Support Adams & Brooks and Do Not Detract from the Likelihood of Confusion**

As for the other factors mentioned by Morris National, they do not detract from the likelihood of confusion.  Morris National first contends that there was no intentional copying of the P-NUTTLES Mark, as it was allegedly unaware of the mark at the time it adopted the NUTFFLES Mark.  Appellant's Br., at 50. However, "proof of intent to trade on another's goodwill, while persuasive evidence of likelihood of confusion, is not, in any event, a requirement under section 2(d)." *Jewelers Vigilance Comm., Inc. v. Ullenberg Corp.*, 853 F.2d 888, 891 (Fed. Cir. 1988) *see also Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 875 (2d Cir.1986) ("It must be remembered, however, that intentional copying is not a requirement under the Lanham Act. Also, intent is largely irrelevant in determining if consumers likely will be confused as to source.").  Consumers are still likely be confused by the close similarities between P-NUTTLES and NUTFFLES even if Morris National adopted the NUTFFLES

Mark in good faith without any knowledge of Adams & Brooks' rights. *See GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1208 (9th Cir. 2000) ("[E]ven if we … concluded that Disney was as innocent as a fawn with no intent to copy or appropriate GoTo's logo, it would prove nothing since no such intent is necessary to demonstrate a likelihood of confusion.").

Morris National also argues that the purported lack of any evidence of actual confusion should have been weighed against Adams & Brooks. Appellant's Br., at 50-51. However, Morris National's products ███████████████████████ ████████████████████████████████████████████████████████████ ██████████████. For example, from June of 2009 through June of 2010, ██████ ████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████ Under these circumstances, the absence of known instances of actual confusion does not weigh against Petitioner. *See Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 464(7th Cir. 2000) (finding that where the junior user's product is new on the market such that there has been little opportunity for actual confusion, evidence of actual confusion cannot be expected); *Interstate Brands Corp. v. McKee Foods Corp.*, 53 USPQ2d 1910, 1915 (TTAB 2000) ("[T]he time period in which both products have been on the market has been

relatively brief – a little more than two years at the time of applicant's testimony…We cannot conclude [that] there has been sufficient opportunity for confusion to occur.").

Finally, Morris National claims that the "extent of potential confusion" factor should have been weighed against Adams & Brooks.  Appellant's Br., at 51.  However, this argument is based upon flawed factual assertions and an incorrect reading of the law.  Morris National argues that the extent of potential confusion is low because the parties' goods are allegedly noncompetitive.  However, Adams & Brooks demonstrated during the cancellation proceeding that the parties' products were sold through the same channels of trade, including many of the same stores.  A274-75, A286-87, A290, A648:16-20, A599.  Moreover, the record also demonstrates that Adams & Brooks' P-NUTTLES products are often sold directly next to "premium" chocolate products such as those marketed by Dove, which

██████████████████████████████████████████████████████

███████████████.  Under these circumstances, the potential for consumer confusion is extremely high.

Morris National cites *Federated Foods, Inc. v. Fort Howard Paper Co.*, 544 F.2d 1098, 1103 (CCPA 1976) for the proposition that not all goods sold in the supermarket are related, and that the fact that different types of products may be sold in supermarkets does not always weigh in favor of a likelihood of confusion.

41

However, the facts in that case involved toilet paper on one side, and sponges, plastic bags, and aluminum foil on the other side. These products are obviously much less closely related than the products at issue here, which the Board correctly found to be identical. A18.

Therefore, to the extent that the potential for confusion is relevant in this case, it should be weighed strongly in favor of Adams & Brooks.

## 5. The Board Correctly Weighed the *duPont* Factors

Finally, the Board correctly weighed the *duPont* factors in concluding that a likelihood of confusion exists. The Board thoroughly explained the manner in which it weighed the factors:

> After considering all of the evidence of record and argument pertaining to the *du Pont* likelihood of confusion factors, including ones not specifically discussed herein, we find that because the marks are similar, the goods are legally identical, and the channels of trade and consumers are presumed to overlap, there is a likelihood of confusion between respondent's [NUTFFLES] mark and the registered [P-NUTTLES] marks when used in connection with the identified goods.

A24.

The Board's weighing of the factors is a legal conclusion reviewed by this Court *de novo*. However, since the Board determined that all of the relevant *duPont* factors either favored Adams & Brooks or were neutral, and since all of these factual findings were supported by substantial evidence, there is no other possible conclusion that can be drawn other than that Morris National's

NUTFFLES mark is likely to be confused with Adams & Brooks' previously
registered P-NUTTLES Mark.

Therefore, the Court should confirm the Board's conclusion of a likelihood
of confusion.

### 6. The Board Did Not Err in Denying Morris National's Motion to Amend Its Application

Finally, Morris National argues that the Board erred in denying its request to
amend the identification of goods in its NUTFFLES registration from "chocolate
and candy" to "chocolate, namely, premium Belgian chocolate truffles."
Appellant's Br., at 39-43. However, the Board's decision on this motion was
undoubtedly correct, for three reasons: i) the amendment to "Belgian chocolate
truffles" would not diminish the likelihood of confusion, since these goods would
still overlap with Adams & Brooks' "nut candies"; ii) the restriction to "premium"
chocolates would be irrelevant, as Adams & Brooks' registrations are not limited
to any particular market segment; and iii) the characterization of Morris National's
NUTFFLES products as "premium" is factually inaccurate and is not supported by
the record.

First, as the Board explained, even if the amendment were to be accepted,
"[Morris National's] identification of goods would still describe goods
encompassed within [Adams & Brooks'] "nut candies." A17. Morris National's
proposed amended identification, "chocolate, namely, premium Belgian chocolate

truffles," must be read to include all types of Belgian chocolate truffles, including those containing nuts.  Therefore, these products would still directly overlap with the "nut candies" in Adams & Brooks' registration, which must be read to encompass all types of candies containing nuts, including chocolate truffles containing nuts.[4]  Moreover, the record demonstrates that the parties' products do in fact overlap:  Adams & Brooks' "nut candies" include P-NUTTLES with chocolate, while Morris National's NUTFFLES chocolates contain nuts. A270;A352; A646:7-10.

Furthermore, Morris National's attempt to characterize its products as "premium" chocolates also fails to diminish the likelihood of confusion.  Morris National failed to come forth with any evidence as to the meaning of the term "premium" in the candy marketplace.  Although the ultimate burden of proof in the cancellation was on Adams & Brooks, the burden was on Morris National to show that its requested amendment would prevent a likelihood of confusion.  In its brief, Morris National merely argues that "premium" channels of trade do not include discount stores, 99 cent stores, or re-baggers.  Appellant's Br., at 42.  As in the Board proceeding, Morris National fails to explain exactly what "premium"

---

[4]  As the Board noted, the dictionary defines a "truffle" as a type of candy.  A17 n. 4.

channels of trade are, or how these channels differ from those of "non-premium" candy products. A1200.

In addition, even if there is a recognized "premium" segment of the candy market with entirely distinct channels of trade, Adams & Brooks' registrations for its P-NUTTLES Mark do not contain any limitations as to market segment. Therefore, Adams & Brooks' "nut candies" must be interpreted to refer to <u>all</u> types of nut candies, whether they are sold in the premium, mass market, or discount market segments, and whether they are sold through "premium" channels of trade (to the extent such channels exist) or non-premium channels. A1201.

Finally, the Board's decision to deny the amendment was also correct because the proposed amendment was not supported by the factual record. Although Morris National sought to characterize its NUTFFLES products as "premium" candy, the record demonstrates that NUTFFLES products are sold at extremely low prices (39 cents or $1.29, depending upon package size), and that they are sold through channels of trade such as supermarkets and convenience stores, which certainly would not be considered "premium." A599, A652:14-16, A686:3-6. Therefore, even if Adams & Brooks' P-NUTTLES registrations excluded "premium" candies, which they do not, Morris National should not be allowed to falsely characterize its NUTFFLES products as "premium" in a desperate effort to avoid a likelihood of confusion between the parties' marks.

The Board's conclusion that Morris National's Motion to Amend its registration would not avoid a likelihood of confusion is thus supported by substantial evidence and should be affirmed.

## VII.  CONCLUSION

In conclusion, the Board's factual findings are supported by substantial evidence and its legal findings are correct.  Therefore, the Court should confirm the Board's decision ordering the cancellation of U.S. Reg. No. 3,719,863.

Respectfully submitted,

ADAMS & BROOKS, INC.

  /s/ Bassam N. Ibrahim/
Bassam N. Ibrahim
Bryce J. Maynard
Buchanan Ingersoll & Rooney PC
1737 King Street, Suite 500
Alexandria, Virginia  22314
(703) 836-6620
Attorneys for Appellee
Adams & Brooks, Inc.

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the appellate CM/ECF system on April 25, 2014 which will send notice to the following CM/ECF participants, whom I will also serve via Federal Express:

> Elliot B. Gipson
> Phu Nguyen
> FAYER GIPSON LLP
> 2029 Century Park East, Suite 3535
> Los Angeles, California  90067
> Phone:  310-557-3558
> egipson@fayergipson.com
> pnguyen@fayergipson.com

> By:   /s/ Bassam N. Ibrahim
> Bassam N. Ibrahim
> Buchanan Ingersoll & Rooney, PC
>
> Attorney for Appellee
> Adams & Brooks, Inc.

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Federal Rules of

Appellate Procedure, Rule 32(a)(7)(B) because the brief contains 10,378 words,

excluding parts of the brief exempted by Federal Rules of Appellate Procedure,

Rule 32(a)(7)(B)(iii) and the Federal Circuit Rule 32(b).

2.      This brief complies with the typeface requirements of Federal Rules of

Appellate Procedure, Rule 32(a)(5) and the type style requirements of Federal Rule

of Appellate Procedure, Rule 32(a)(6), because the brief has been prepared in a

proportionally-spaced typeface using Microsoft Word in 14-point Times New

Roman type style.

DATED:  April 25, 2014_____

> By:   /s/ Bassam N. Ibrahim_____
>        Bassam N. Ibrahim
>        Buchanan Ingersoll & Rooney, PC
>
>        Attorney for Appellee
>        Adams & Brooks, Inc.